1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SI VAN DANG,

11          Petitioner,              No. 2:05-cv-02157 ALA HC

12      vs.

13   JAMES WALKER, Warden[1]             ORDER

14          Respondent.

15   _____/

16       Si Van Dang ("Petitioner"), a state prisoner proceeding with counsel, has filed an

17   application for writ of habeas corpus pursuant to 28 U.S.C. § 2254(a).  (Doc. 1).  In 1997,

18   Petitioner was convicted in San Joaquin County Superior Court for murder and attempted

19   murder.  He is currently serving a sentence of thirty-five years to life, for convictions of first-

20   degree murder, attempted murder, and personal use of firearms during the commission of both

21   offenses.  Petitioner raises three claims in his application filed October 26, 2005, challenging his

22   conviction and sentence.  For the reasons set forth below, Petitioner's application is DENIED.

23   /////

24   /////

25   ───────────────

26   [1]James Walker is substituted for his predecessor, Scott M. Kernan, as the warden where
the prisoner is incarcerated, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

**I**

Petitioner was one of four men involved in a shooting in a residential home in Stockton, California.[2]  At the time, Petitioner's co-defendant Len Nguyen, and the victim, Andy Tran, were students at Plaza Robles High School, a continuation high school.  Nguyen attended the first daily session, which ended at 10:15 a.m., and Tran attended the second session, which began at 10:25 a.m.

Tran was a close friend of Cuong Phan, who lived with his family across the street from the school.  Tran was often at Phan's house before and after school.  On March 6, 1996, shortly after the first session at the School, Nguyen and Tran got into a fight outside Phan's house.  There was no physical violence, and the fight did not last long.

Nguyen immediately contacted Petitioner and reported that he just experienced a problem with Tran.  Petitioner, Kiet Ahn Tran ("Kiet"), Nhat Nguyen ("Nhat"), and Nguyen then went to Phan's house, looking for Tran and Phan.  Neither Tran nor Phan were there.

On March 7, 1996, the next day, Petitioner drove Kiet and Nhat to Phan's house.  They arrived in front of Phan's house around 10:10 am.  Phan was inside with his family, his parents' friend, Sen Dang ("Sen"), and his friends, Phillip Nguyen and Huy Vo.  Petitioner knocked on the front door and there was no answer.  Petitioner then returned to his parked car and stood smoking and talking with Kiet and Nhat.

A few minutes later, Tran's mother dropped him off at the School.  Tran then entered Phan's house.  As the first school session ended, Nguyen approached Petitioner, Kiet, and Nhat.  The four appeared to talk seriously.  They then took off their jackets and approached Phan's house.

There is conflicting testimony as to whether someone inside the house let Petitioner and his co-defendants in, or whether they let themselves in.  Petitioner and his co-defendants stepped

---

[2]The facts set forth are extracted from *People v. Tran*, No. C027927, 2003 Cal. App. Unpub. LEXIS 4653 (Cal. Ct. App. May 13, 2003).

into the living room entry.  Phan told Petitioner to get out of his house.  Petitioner responded with a derogatory remark.  Petitioner then asked Kiet for the gun.  Kiet pulled out a black handgun and handed it to Petitioner.  Petitioner started shooting in Tran's direction.  Tran ducked behind the couch but was killed by a bullet that pierced through the couch into his chest.  Sen was hit near the left ankle by a bullet.

Petitioner and his co-defendants ran towards Petitioner's car.  It failed to start.  They fled on foot.  Phan appeared to give chase but quickly returned to his house.  After hiding in a neighbor's yard, Petitioner and his co-defendants contacted a friend, Hung Nguyen ("Hung"), who picked them up in his car.

Later that day, the police observed Hung's car arrive at Petitioner's house.  Hung retrieved a black bag and placed it in the car's passenger compartment.  Hung testified that Petitioner had asked him to "save" the bag and agreed to pick it up the next day.  The black bag contained a sawed-off shotgun without a serial number and several boxes of ammunition.  The police also found loaded guns including a nine-millimeter pistol, and more ammunition in the trunk.

That evening, the police apprehended Petitioner and his co-defendants.  They waived their Miranda rights and agreed to be interviewed by the police.  Nhat admitted he was at the house during the shooting.  He also said his fingerprints might be on the gun because he carried it as he ran from the house and hid it in the neighboring yard.  Nguyen also admitted he was at the house.  Kiet denied being in the house when Tran was shot and said he waited in the car.

At trial, the prosecution argued that Petitioner and his co-defendants were members of a criminal street gang called the Mafia Asian Crew ("MAC") and they believed Tran to be a member of a rival street gang.  The prosecution argued that the shooting was a home invasion murder committed in retaliation for Tran's fight with Nguyen the previous day.

Petitioner testified at his trial.  He admitted shooting Tran, but testified that he did so in self-defense.  The jury convicted Petitioner and his co-defendants of the first degree murder of

1  Tran and the attempted murder of Sen.  The jury also found that in committing those offenses,

2  Petitioner personally used a firearm and intended to inflict great bodily injury upon Sen.

3         Petitioner filed a direct appeal from the judgment of guilt and his sentence.  In *People v.*

4  *Tran*, No. C027927, 2003 Cal. App. Unpub. LEXIS 4653 (Cal. Ct. App. May 13, 2003), the

5  California Court of Appeal affirmed the Superior Court's judgment.  Petitioner's request for

6  review of the California Court of Appeal's decision was summarily denied by the California

7  Supreme Court on June 29, 2005.[3]

8         On October 26, 2005, Petitioner filed an application for writ of habeas corpus in this

9  Court.  Therein, Petitioner challenges his conviction and sentence under 28 U.S.C. § 2254(a).

10                                              **II**

11        Federal habeas corpus relief is not available for any claim decided on the merits in state

12  court proceedings unless the state court's adjudication of the claim:

13              (1) resulted in a decision that was contrary to, or involved an
                unreasonable application of, clearly established Federal law, as
14              determined by the Supreme Court of the United States; or

15              (2) resulted in a decision that was based on an unreasonable
                determination of the facts in light of the evidence presented in the
16              State court proceeding.

17  28 U.S.C. § 2254(d).

18        Petitioner sets forth three claims.  First, he contends that failure of his appellate counsel

19  to raise a *Batson* challenge constituted ineffective assistance of counsel.  Second, Petitioner

20  argues that the trial court's admission of three items of evidence infringed upon his federal due

21  process rights.  Third, Petitioner alleges that the prosecutor engaged in a pervasive pattern of

22

23  ─────────────────

24       [3]In determining whether the California courts erred in holding that Petitioner's federal
    constitutional rights were not violated, this Court must look to the California Court of Appeal's
25  decision as the last reasoned state court opinion addressing Petitioner's arguments.  *See Franklin
    v. Johnson*, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002) (explaining that when a subsequent appeal is
26  denied without comment, a federal court must review the last state court decision that actually
    addresses a claim).

                                                 4

1   misconduct that violated his due process rights.  Each of these arguments will be addressed in

2   turn.

### III

4       Petitioner asserts that his counsel on his direct appeal rendered ineffective assistance of

5   counsel in violation of his Sixth Amendment rights.  He argues that his appellate counsel's

6   failure to raise the trial court's denial of his motion to quash the jury panel based on *Batson v.*

7   *Kentucky*, 476 U.S. 79 (1986), constituted a denial of his federal constitutional right to the

8   effective assistance of appellate counsel.

9       Petitioner must establish two elements for an ineffective assistance of counsel claim.

10  First, Petitioner must show that, considering all the circumstances, counsel's performance fell

11  below an objective standard of reasonableness.  *See Strickland v.* Washington, 466 U.S. 668, 688

12  (1984).  To this end, Petitioner must identify the acts or omission that are alleged not to have

13  been the result of reasonable professional judgment.  *Id.* at 690.  The court must then determine

14  whether in light of all the circumstances, the identified acts or omissions were outside the wide

15  range of professional competent assistance.  *Id.*  Second, Petitioner must affirmatively prove

16  prejudice.  *Id.* at 693.  Prejudice is found where "there is a reasonable probability that, but for

17  counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at

18  694.  A reasonable probability is "a probability sufficient to undermine confidence in the

19  outcome."  *Id.  See also United States v. Murray*, 751 F.2d 1528, 1535 (9th Cir. 1985) (holding

20  that counsel's conduct and strategic choices were within the wide range of reasonable

21  professional representation and that combined with overwhelming evidence against the

22  defendant, there was no reasonable probability that the outcome would have differed); *United*

23  *States v. Schaflander*, 743 F.2d 714, 717-18 (9th Cir. 1984) (per curiam) (holding that counsel's

24  alleged acts and omissions did not fall outside the wide range of professional competent

25  assistance and that defendants failed to establish grounds for relief based on professional

26  incompetence).

To determine whether petitioner's appellate counsel's performance fellow below an objective standard of reasonableness, this Court must first address whether the alleged *Batson* violation occurred.

## A

Petitioner argues that he was denied his federal constitutional right to effective assistance of counsel when his appellate counsel failed to raise the trial court's denial of his motion to quash the jury panel in his direct appeal based on *Batson*.  (Pet. at 5.)  Respondent contends that the trial judge's finding of no prima facie case of racial bias in the prosecutor's exercise of his peremptory challenges was correct based on the prospective jurors' answers and demeanor.

## B

Purposeful discrimination on the basis of race or gender in the exercise of peremptory challenges violates the Equal Protection Clause of the United States Constitution.  *Batson*, 476 U.S. at 89; *Johnson v. California*, 545 U.S. 162 (2005).  *Batson* claims are analyzed pursuant to a three-step test:

> First, the movant must make a prima facie showing that the prosecution has engaged in the discriminatory use of a peremptory challenge by demonstrating that the circumstances raise "an inference that the prosecutor used [the challenge] to exclude veniremen from the petit jury on account of their race." [Citation omitted.] Second, if the trial court determines a prima facie case has been established, the burden shifts to the prosecution to articulate a neutral explanation for challenging the juror in question. [Citation omitted.] Third, if the prosecution provides such an explanation, the trial court must then rule whether the movant has carried his or her burden of proving the existence of purposeful discrimination.

*Tolbert v. Gomez*, 190 F.3d 985, 987-88 (9th Cir. 1999) (en banc).  The burden of persuasion regarding discriminatory motivation "rests with, and never shifts from, the opponent of the strike."  *Yee v. Duncan*, 463 F.3d 893, 898 (9th Cir. 2006) (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995)).  However, the government does not need to assert race-neutral explanations

1  for its peremptory challenges unless the defendant has satisfied the initial burden of proof.

2  *Powers v. Ohio*, 499 U.S. 400, 402 (1991).

3      A defendant fulfills the first requirement of the *Batson* test by setting forth evidence

4  sufficient to permit the trial judge to draw an inference that discrimination has occurred.

5  *Johnson*, 545 U.S. at 170.  The Supreme Court mandates consideration of all relevant facts and

6  circumstances when determining whether a prima facie case in context of discriminatory

7  selection of the venire is established.  *Batson*, 476 U.S. at 96; *see also, e.g., United States. v.*

8  *Clemons*, 843 F.2d 741 (3rd Cir. 1987) (holding that trial judges should examine all relevant

9  factors such as the number of members from the "cognizable racial group" in the jury panel,

10  nature of the crime, race of the defendant and victim).

11      For instance, a "bare record of statistical disparities" that indicates a pattern of strikes

12  against Hispanics and African American venire-persons might be construed as establishing a

13  prima facie case.  *Batson,* 476 U.S. at 97; *see, e.g., United States v. Horsley*, 864 F.2d 1543,

14  1546 (11th Cir. 1989) (finding an inference of discrimination where every Hispanic juror was

15  removed by the government's peremptory challenge).  However, the fact that the prosecution

16  uses peremptory challenges to strike jurors of a certain race, without more, is not per se

17  unconstitutional.  *United States v. Vasquez-Lopez*, 22 F.3d 900, 902 (9th Cir. 1994).  Indeed,

18  "*Batson* does not require that the government adhere to a specific mathematical formula in the

19  exercise of its peremptory challenges." *See, e.g., United States v. Montgomery*, 819 F.2d 847,

20  851 (8th Cir. 1987).  Accordingly, post-*Batson* decisions eschew a bright-line rule involving

21  specific numbers or percentages in establishing a prima facie case.

22      Moreover, the willingness of the prosecution to accept minority jurors weighs against the

23  inference of a prima facie case.  *United States v. Chinchilla*, 874 F.2d 695, 698 n.4 (9th

24

25

26

Cir.1987).[4]   In order to infer racial bias, the record should be examined for evidentiary support

to validate the contention that prospective jurors were stricken on a discriminatory basis. Also,

the sufficiency of a prima facie case is considered in light of substantial deference granted to the

trial court in review of its decisions. *Thompson v. Keohane*, 516 U.S. 99, 114 (1995). In *Batson*,

the Supreme Court notes that the prosecutor's questions and statements during *voir dire* and in

exercising his challenges may support or refute an inference of discriminatory purpose. *Batson*,

476 U.S. at 95.  The Supreme Court has instructed that a broad deference should be accorded to

the discretion of trial judges in determining whether circumstances surrounding the prosecution's

use of peremptory challenges establishes a prima facie case of discrimination.  *Id*.  The Supreme

Court has specifically recognized the importance of the trial court's "first-person vantage" in

*voir dire. Thompson*, 516 U.S. at 114.  The Ninth Circuit has emphasized the trial court's

advantage in facilitating a prima facie inquiry due to the heavy reliance upon facts and first-hand

observations made in open court.  *Tolbert v. Page*, 182 F.3d 677, 684 (9th Cir. 1999).

## C

_____At trial, defense counsel raised a *Batson* challenge by oral motion. Counsel noted that

five of the prosecution's ten peremptory challenges were exercised to excuse African-American

and Hispanic jurors.   Defense counsel argued that excusing five African-American and Hispanic

jurors, along with comparison of the oral *voir dire* and written questionnaires of challenged and

non-challenged jurors, gave rise to an inference of discriminatory use of peremptory challenges

and demonstrated a prima facie case under *Batson*.  Defense counsel requested that the

---

[4]*See also, e.g., Montgomery*, 819 F.2d at 851 (finding no prima facie case where the government accepted a jury including two African-Americans, did not use its remaining peremptory challenge to strike remaining African-Americans and did not attempt to exclude all African-Americans or as many African-Americans as it could); *United States v. Grandison*, 885 F. 2d 143, 147 (4th Cir. 1989) (holding that the inclusion of two African-American jurors is significant where the government could have used a remaining strike against those jurors but three times declined to do so); *cf. United States v. Dennis*, 804 F.2d 1208, 1211 (11th Cir. 1986) (holding that the government striking of three African-Americans was not a prima facie case of discrimination where the government accepted two African-Americans on the jury).

1    prosecution be required to state the reasons for the exercise of its challenges.  (Reporters'

2    Transcript on Appeal ("RT") at 98-100).  The trial court denied the *Batson* motion and found

3    that a prima facie case had not been established. (RT at 101).[5]  Petitioner contends that the trial

4    court's ruling was erroneous under *Batson,* and that his appointed appellate attorney rendered

5    ineffective assistance by failing to raise this as an appellate issue in his direct appeal. (Doc.3).

6    Petitioner argues before this Court that a prima facie case of discrimination was clearly

7    established by the fact that five of the prosecution's ten peremptory challenges had been

8    exercised against persons of color.

9         Petitioner has failed to establish a prima facie case under *Batson*.  First, the mere use of a

10   peremptory challenge to strike a juror of a certain race is not per se unconstitutional.   While

11   statistical analysis of the exercise of peremptory challenges can be relevant to the establishment

12   of a prima facie case, it is not dispositive.  *Batson,* 476 U.S. at 96-7.  At least two of the seated

13   jurors were Hispanic.  The inclusion of minority jurors weighs against the inference of

14   discrimination.  *Chinchilla*, 874 F.2d at 698 n.4. Additionally, the prosecution also declined to

15   use its peremptory challenges on several Hispanic-surnamed jurors.  (Augmentation to

16   Reporters' Transcript on Appeal ("ART") at 581-83, 587, 606).

17        An examination of stricken jurors' oral *voir dire* and written examinations fails to lend

18   support to Petitioner's argument that the prosecution purposefully discriminated in striking

19   certain jurors based on race.  Petitioner argues that neither the oral *voir dire* nor written

20   questionnaires of the challenged minority jurors suggest any obvious reasons why they should

21   have been disqualified.  (Pet. at 8).  However, evaluation of the record yielded obvious race-

22   neutral reasons for these peremptory challenges.  As set forth below, the record shows that there

23   was a race-neutral reason why the prosecutor exercised his peremptory challenges against the

24   five African-American and Hispanic jurors.  *Batson*, 476 U.S. at 96.

25   _____

26        [5]The trial court summarily denied the *Batson* motion, finding that "a prima facie showing
     has not been made yet."

Prospective Juror Willie Metoyer was disqualified for two reasons.  He stated that his daughter was shot in an attempted car jacking.  No one was ever prosecuted for that crime.  He also served on a jury that failed to reach a verdict.  These race-neutral facts support the prosecutor's exercise of a peremptory challenge.  (ART at 157-58).

Prospective Juror Ausincea Rivera was an elderly woman with a hearing problem who had  trouble understanding the questions in the written questionnaire.  (ART at 187-89). Given the complexity of this case, the questionable nature of her ability to follow the proceedings was a race-neutral and appropriate concern.

Prospective Juror Joseph Villalobos expressed ambivalence as to whether he could be fair, as well as confusion regarding the meaning of "presumption of innocence."  (ART at 191-92, 231).  These responses raised appropriate race-neutral concerns regarding whether he was qualified to serve as a juror in a criminal trial.

Prospective Juror Fred Benson stated that he had defended himself against physical aggression on numerous occasions.  He also stated that he felt "pretty good" after these experiences.  (ART at 330).  Since the defense planned to rely on self-defense to raise a reasonable doubt regarding his guilt, the prosecutor's reason for exercise of a peremptory challenge was race-neutral.

Prospective Juror Margaret Antoine cited an instance where she defended herself against an attack from an ex-husband.  (ART at 333).  She also stated that she might be unable to find an aider and abettor responsible for the natural and probable consequences of the crimes he or she agreed upon.  (ART at 347).  Since the prosecution's case against the Petitioner's co-defendants was based on the natural and probable consequences doctrine, there was a compelling race-neutral reason for excusing her.[6]

---

[6]After the trial court had denied plaintiff's *Batson* motion, the prosecution struck a sixth juror.  This juror was not considered in the determination of a *Batson* prima facie case, but Petitioner raised a subsequent objection to the dismissal in his memorandum in support of writ of

1    Petitioner claims that the circumstances of the jury selection process parallels the

2  Supreme Court's decision in *Johnson v. California*, 545 U.S. 162 (2005).  In *Johnson*, the

3  prosecution's peremptory challenges were used to remove all the African-American prospective

4  jurors. The resulting jury, including alternates, was all white.  The instant case is readily

5  distinguishable.  Here, there is no evidence of a systematic exclusion of all minority jurors from

6  the panel.  The record shows that the prosecution did not utilize its peremptory challenges

7  against several minority jurors who were African-American or Hispanics.  (ART at 581-83, 587,

8  594,  606).

9    Petitioner's argument that appellate counsel's failure to supplement the *Batson* claim

10  with a request for a comparative jury analysis constituted ineffective assistance of counsel also

11  lacks merit.  *See, e.g., Boyd v. Newland*, 467 F.3d 1139, 1148-49 (9th Cir. 2006) (holding that

12  comparative juror analysis is an important tool that courts should utilize on appeal when

13  assessing a *Batson* claim).  To evaluate whether a state court unreasonably applied the *Strickland*

14  standard in a habeas corpus proceeding filed pursuant to § 2254(a), federal courts must examine

15  trial counsel's representation in light of the facts of the case and the state law relevant to

16  counsel's alleged inferior performance. *See, e.g., Wiggins v. Smith*, 539 U.S. 510, 536 (2003)

17  (finding trial counsel's representation deficient in part for failing to present expert testimony that

18  would have been admissible under Maryland state law); *Stenson v. Lambert*, 504 F.3d 873, 889-

19  90 (9th Cir. 2007) (holding that counsel's representation was not ineffective because the theory

20  of the case that the petitioner desired his counsel to follow relied on evidence that would not

21  have been admissible under state law).

22  /////

23  _____

24  habeas corpus.  Prospective Juror Angel Villalobos was Joseph's Villalobos' brother (ART at
     200).  He was dismissed after the trial court evaluated and denied the *Batson* motion, which
     makes his dismissal irrelevant in establishing a prima facie case of discrimination.  Furthermore,

25  Mr. Villalobos expressed belief that law enforcement had ignored his sister-in-law's plight as a
     robbery victim.  (ART 255).  This, in conjunction with the fact that his brother had previously

26  been excused, supports the prosecution's use of a peremptory challenge.

1    In the instant matter, the Court must look to the relevant California law to assess whether

2  appellate counsel acted unreasonably. Under controlling California authority, a comparative jury

3  analysis would have been irrelevant.  The California Supreme Court held in *People v. Johnson*,

4  30 Cal.4th 1302 (2003), that a comparative jury analysis on appeal is unreliable and does not

5  give due deference to the trial court's ruling.  *Id.* at 1306.  The Court determined that a

6  comparative jury analysis on appeal "would undermine the trial court's credibility

7  determinations and would discount 'the variety of [subjective] factors and considerations,'

8  including 'prospective jurors' body language or manner of answering questions,' which

9  legitimately informs a trial lawyer's decision to exercise peremptory challenges.  *Id.* at 1320.

10  Therefore, a comparative jury analysis to determine whether the trial court erred in denying an

11  objection to the use of peremptory challenges is not required.  Appellate counsel's choice not to

12  raise a *Batson* claim on these grounds was not unreasonable.   Thus, the state court reasonably

13  denied Petitioner's claim of ineffective assistance of appellate counsel.

14    Furthermore, Petitioner was required to make an objection based on the issue of

15  comparative jury analysis at trial.  Pursuant to California law, to preserve an issue on appeal,

16  Petitioner is required to make an objection at trial.  *People v. Clark,* 857 P.2d 1099, 1122, n.13

17  (Cal. 1993) (holding that when a party does not raise an argument at trial, he may not do so on

18  appeal).  If Petitioner is unable to demonstrate that contemporaneous objections were made to

19  the issues above, then the doctrine of procedural default bars this Court from addressing those

20  claims.  *Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (holding that federal habeas is

21  barred if the petitioner fails to meet a state procedural requirement).  Here, the record fails to

22  show that Petitioner's trial counsel requested a comparative analysis of the oral *voir dire* and

23  written questionnaires of challenged and non-challenged jurors.[7]  Since no contemporaneous

24

25

26    [7]Petitioner was represented by separate counsel on his direct appeal.

objection was made, appellate counsel acted reasonably in not raising the failure to argue that trial court erred in not requiring a comparative analysis.

In light of the traditional deference towards the trial court's assessment of a prima facie case, the facts and circumstances of the instant case do not give rise to the inference of discrimination in violation of *Batson*. There are race-neutral reasons for the exercises of the peremptory challenges.  There is also an absence of circumstances apparent on the record of *voir dire* to sufficiently raise an inference of discrimination.

Based on the foregoing, Petitioner failed to establish a prima facie case sufficient to constitute a *Batson* claim.  *Gordon v. Duran*, 895 F.2d 610, 615 (9th Cir. 1989) (finding that an ineffective assistance of counsel claim has no merit where Petitioner fails to make a showing of systematic exclusion of African-Americans from the jury).  Petitioner has not set forth acts or omissions that are alleged not to have been the result of reasonable professional judgment. *Strickland*, 466 at 690.  Therefore, Petitioner's appellate counsel's performance did not fall below an objective standard of reasonableness.  Thus, the claim of ineffective assistance of counsel on appeal must fail.

**IV**

Petitioner claims that his due process rights were violated because the trial court erroneously admitted three items of evidence.

**A**

Petitioner first argues that the trial court erred in allowing the prosecution to introduce evidence of Petitioner's prior gang affiliation.  He argues that the admission of such evidence was prejudicial and violated his due process rights.

A federal court cannot disturb a state court's decision to admit evidence on due process grounds in a § 2254(a) proceeding unless the admission of the evidence was "arbitrary or so

1  prejudicial that it rendered the trial fundamentally unfair." *See Walters v. Maass*, 45 F.3d 1355,

2  1357 (9th Cir. 1995) (holding that the state court's admission of evidence relating to defendant's

3  prior convictions was not arbitrary or unduly prejudicial as to deny defendant a fair trial because

4  the trial court gave limiting instructions for the use of admitted evidence).  To grant relief on this

5  ground, a federal habeas court must find that the error had "a substantial and injurious effect on

6  the verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

7       This Court need not determine whether it was error to admit evidence related to Petitioner's

8  gang affiliation because it did not render the trial fundamentally unfair.  "The court in its

9  discretion may exclude evidence if its probative value is substantially outweighed by the

10  probability that its admission will (a) necessitate undue consumption of time or (b) create

11  substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  Cal.

12  Evid. Code § 352 (Deering 2008).  Here,  the California Court of Appeal held that this evidence

13  was relevant to issues of intent, motive, and whether murder or attempted murder could be a

14  natural and probable consequence of an assault perpetrated by a gang.  The California Court of

15  Appeal held that any prejudicial effect of this evidence was outweighed by its probative value.

16  *Tran*, 2003 LEXIS 4653, at *37-43.

17       "Gang evidence is admissible if relevant to motive or identity, so long as its probative

18  value is not outweighed by its prejudicial effect."  *People v. Williams*, 16 Cal. 4th 153, 193

19  (1997).  Here, evidence of defendants' gang affiliation and their beliefs about the victim's

20  affiliation with a rival gang was relevant to the prosecution's theory of why the victim was shot.

21  The prosecution's theory of the crime was based on the notion that a person who aids and abets

22  another in the commission of a crime is guilty of any other crime committed by a principal

23  which is the natural and probable consequence of the crime. Evidence of gang affiliations was

24  relevant to the prosecution's theory that murder or attempted murder was a natural and probable

25  consequence of an assault committed by a gang.  Thus, the probative value of the evidence of

26

gang affiliation outweighed any prejudicial effect.  Petitioner failed to demonstrate that admission of this evidence rendered his trial fundamentally unfair.  *Walters,* 45 F.3d at 1357. Therefore, this claim is denied.

**B**

Petitioner next asserts that the trial court erred in permitting the prosecution to introduce evidence of weapons and ammunition that was not linked to the charged crimes.  He contends that his due process rights were violated and that he was denied a fair trial by the introduction of this evidence.  Petitioner argues that this evidence was only relevant to attack his character and, therefore, was inadmissible under California Evidence Code Section 352.  He also asserts that the evidence was irrelevant.

After weighing the probative value of that evidence against its prejudicial effect, the trial court admitted other weapons found in the car under California Evidence Code Section 352.  (RT at 157).  The California Court of Appeal held this was not error because there was no reasonable likelihood that a different verdict would have been reached in the absence of the foregoing evidence.  The California Court of Appeal found that substantial evidence demonstrated that Petitioner and co-defendants were responsible for planning and execution of the shootings. *Tran*, 2003 LEXIS 4653, at *49-52.

Evidence of the possession of ammunition is of probative value for the permissible purpose of demonstrating a consciousness of guilt against the Petitioner's claim of self-defense. In *People v. Riser*, 47 Cal. 2d 566, 577 (1957), the California Supreme Court held that admission of weapons other than the murder weapon discovered in defendants' possession at the time of arrest several weeks after the commission of the crime, was error.  Here, the circumstances are distinguishable.  The weapons were found in the Petitioner's car by police officers shortly after the commission of the crimes. There is no direct evidence set forth as to the fatal shooting that would render this evidence irrelevant to establish facts material to the proof of the charged

offenses.  *People v. Neely*, 6 Cal. 4th 877, 896 (1993) (holding that defendant failed to establish that challenged admission of gun and ammunition was inadmissible under *Riser*).  Thus, admission of the unrelated weapons is not prohibited by *Riser*. Additionally, evidence of the defendants' arsenal was highly probative to proving the prosecution's theory that an attack would result in the use of lethal force, pursuant to the natural and probable consequences doctrine.

Admission of challenged evidence violates due process "[o]nly if there are *no* permissible inferences the jury may draw from the evidence . . . ."  *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).  Here, the action of removing the quantity of ammunition gave rise to a rational inference that they were affirmatively avoiding police discovery of the weapons and were not victims who acted in self-defense. The jury can also make other fair and rational inferences from this evidence regarding the consciousness of guilt, as set forth by Respondent in Respondent's Answer to the Petition for Writ of Habeas Corpus:

> Moreover, as the state courts found, the presence of this "virtual arsenal of other weapons" made it more likely that (1) the attack on Andy would result in the use of lethal force and (2) that Petitioner's codefendants would know that firearms would likely be involved, or at least available, during this confrontation.

If admissible for this purpose, the evidence was not irrelevant.  Thus, the evidence is relevant and prejudicial effect is outweighed by its probative value.  Petitioner must demonstrate that admission of this evidence rendered his trial fundamentally unfair.  *Id.*  Evidence in this case shows that Petitioner and his co-defendants planned and carried out a home invasion involving deadly firearms.  The overwhelming weight of evidence also indicates that Petitioner was the killer.  Therefore, the admission of evidence of other ammunition could not have had a significant impact on the deliberations regarding Petitioner's guilt or responsibility.  Because admission of this evidence did not have "a substantial and injurious effect on the verdict," Petitioner is not entitled to federal habeas relief on this ground.  *Brecht*, 507 U.S. at 623.

**C**

Finally, Petitioner argues that he was unconstitutionally denied the right to confront a witness.  He claims that the trial court erred when it denied his request to redact portions of his tape-recorded interview with the police which included questions posed, or statements made, by interviewing officers in which they disputed Petitioner's version of the shooting.  Petitioner argues that the following three remarks from the interrogation tapes should have been redacted: 1) statements from interrogating officers that they did not believe that Petitioner acted in self-defense and that neither would the jury; 2) statements from interrogating officers that individuals in the neighborhood identified Petitioner as the shooter; and 3) statements from interrogating officers that the co-defendants stated that Petitioner had carried the murder weapon into the house.  Petitioner contends that the admission of such evidence violated his Sixth Amendment right to confrontation and cross-examination of witnesses.

The Ninth Circuit has held that admission of evidence infringes upon due process rights only when "there are *no* permissible inferences the jury may draw from the evidence . . . ." *Jammal v. Van de Camp*, 926 F.2d 918, 920 (9th Cir. 1991).  Petitioner fails to support his contention that the jurors would perceive the interrogating officers' statements as factual assertions of additional evidence.  Indeed, the trial court specifically instructed the jury to ignore any alleged statements of facts made by interrogating officers.  (RT at 3841).  Jurors are assumed to abide by such court instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  No facts are set forth to the contrary in this instant case.  Moreover, the two detectives who interrogated Petitioner were available for cross-examination.  However, Petitioner chose not to exercise his option to recall the detectives, both witnesses in this case, for cross-examination.

The introduction of the unredacted interview did not violate Petitioner's Sixth Amendment rights.

/////

**V**

Petitioner next claims that his due process rights were violated by the prosecutor's pervasive pattern of misconduct throughout his trial.  (Pet. at 44).  Petitioner claims his trial was rendered fundamentally unfair because the prosecutor: (1) engaged in flagrant discovery violations; (2) violated evidentiary rulings; (3) evidenced bad faith throughout trial; (4) engaged in rude and disrespectful behavior towards defense counsel and the trial court; and (5) made improper and inflammatory statements to the jury during closing argument.  *Id.*

Habeas corpus relief will be granted on grounds of prosecutorial misconduct only when it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 171  (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also Bonin v. Calderon*, 59 F.3d 815, 843 (9th Cir. 1995) (holding that habeas corpus relief only can only be granted  if the error "had substantial and injurious effect or influence in determining the jury's verdict.") (quoting *Brecht*, 507 U.S. at 622).  To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial."  *Greer v. Miller*, 483 U.S. 756, 765 (1987) (citations omitted).

Under this standard, a petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial - *i.e.*, that absent the alleged impropriety, the verdict probably would have been different.  *Id.* at 765-66; *United States v. Weitzenhoff*, 35 F.3d 1275, 1291 (9th Cir. 1994).  "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor . . . [T]he aim of due process 'is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused.'"  *Smith v. Phillips*, 455 U.S. 209, 219 (1982) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)) .  The standard of review for prosecutorial misconduct is, however, a "narrow one of due process, and not the broad exercise of supervisory

power." *Thompson v. Borg*, 74 F.3d 1571, 1576 (9th Cir. 1996) (citations omitted).  "Improper argument does not, per se, violate a defendant's constitutional rights." *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993).

## A

Petitioner contends that the prosecutor delayed in disclosing evidence to defense counsel that could be used to impeach prosecution witnesses.  He argues that as a result, the trial court had to postpone the testimony of prosecution witnesses.

"The suppression by the prosecution of evidence favorable to an accused upon request violates due process where evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  Here, Petitioner has not identified any material impeachment evidence that was suppressed.  Petitioner does not dispute that the impeachment materials were received prior to the examination of the witnesses.  Therefore, no prejudice occurred.  *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988) (holding that substantial opportunity to use information at trial cures any prejudice resulting from delayed disclosure).

Petitioner has not cited any authority to support his claim that he was entitled to the impeachment evidence at an earlier date.  Petitioner has not demonstrated that the delay in access to the impeachment evidence deprived him of a fair trial.  He has not identified any material impeachment information that was suppressed or withheld.  Therefore, Petitioner is not entitled to federal habeas relief on this ground.

## B

Petitioner also claims that his due process rights were violated because the prosecutor engaged in flagrant violations of the trial court's evidentiary rulings.  He argues that the prosecutor asked irrelevant, speculative, and leading questions.  He asserts that the prosecutor

1  "made references to statements of non-testifying defendants" and "repeatedly ignored the court's

2  rulings, despite admonitions, not to exceed the scope of direct examination . . . ." (Doc. 1.)

3      Petitioner has failed to demonstrate that the prosecutor's actions "so infected" his trial

4  that the result was unfair. *Darden*, 477 U.S. at 171.  Rather, the trial court sustained defense

5  objections to the prosecutor's improper questioning of witnesses and, on some occasions,

6  admonished the prosecutor.  *See, e.g.*, *United States v. Cox*, 633 F.2d 871, 875 (9th Cir. 1980)

7  (stating that improprieties in counsel's conduct do not require a new trial unless they are so gross

8  to prejudice the defendant and that prejudice has not been neutralized by the trial judge).

9  Petitioner has failed to demonstrate that the prosecutor's improper questions rendered his trial

10  fundamentally unfair.

11                                          **C**

12

13      Petitioner further asserts that he was denied due process of law because the prosecutor

14  acted in bad faith throughout his trial.  Petitioner describes the prosecutor's alleged bad faith as

15  follows:

16          He withdrew an offer made during trial to Len Nguyen to plead
         guilty to manslaughter, while the defendant was crying and
17          emotionally incapable of making a decision wether to accept the
         offer, despite the trial court's insistence that the interests of justice
18          demanded that the offer remain open.  RT, at pp. 3696-3702.  He
         attempted to introduce evidence of possession of stolen weapons
19          which had previously been excluded by the court.  RT, at p. 1615.
         He made references to statements of non-testifying defendants,
20          prompting the court to warn, "You make reference to another
         codefendant's statement . . . and you get a mistrial . . . ."  RT, at p.
21          3296.  He repeatedly ignored the court's rulings, despite
         admonitions, not to exceed the scope of direct examination,
22          prompting the court to warn, "One more question and I'll contempt
         you on that."  RT, at p. 3512.  Defense counsel was thus placed in
23          the position of making countless objections after the trial court had
         previously sustained objections to the same or nearly identical
24          questions.

25  /////

26  /////

Mere allegations of prosecutorial misconduct are not dispositive. *See Smith v. Philips,* 455 U.S. 209, 220 (holding that prosecutorial misconduct alone did not require a new trial). Petitioner has not shown that the prosecutor's actions "had a substantial and injurious effect" on the jury's verdict. *Bonin*, 59 F.3d at 843. Petitioner fails to demonstrate how the prosecutor's actions met the stringent standards for rendering his trial fundamentally unfair. *See Hovey v. Ayers*, 458 F.3d 892, 924 (9th Cir. 2006) (holding that the impact of prosecutorial comments on the fairness of a trial should be evaluated according to "(1) whether the prosecutor's comments manipulated or misstated the evidence; (2) whether the trial court gave a curative instruction; and (3) the weight of the evidence against the accused.").

Respondent argues that Petitioner's failure to raise contemporaneous objections to most of the alleged prosecutorial acts of misconduct constituted procedural default. Respondent is correct. Pursuant to California law, to preserve an issue on appeal, Petitioner must make an objection at trial. *People v. Clark,* 857 P.2d at 1122, n.13. If Petitioner is unable to demonstrate that contemporaneous objections to acts of prosecutorial misconduct were made, then the doctrine of procedural default bars this Court from addressing those claims. *Boyd,* 147 F.3d at 1126 (holding that federal habeas is barred if the petitioner fails to meet a state procedural requirement). Here, Petitioner fails to establish that he made contemporaneous objections to most of these allegations of prosecutorial misconduct. Therefore, they are procedurally defaulted.

Reversal of the conviction is not merited and Petitioner is not entitled to federal habeas relief on this ground.

### D

Petitioner next claims that his trial was rendered fundamentally unfair because the prosecutor engaged in rude and disrespectful behavior. He argues that the prosecutor's personal

bickering with the defense attorneys during trial violated his due process rights.  Petitioner

describes the prosecutor's alleged rude and disrespectful conduct as follows:

> The trial court found the prosecutor's personal bickering with the
> defense attorneys during trial to be "beneath the dignity of the
> honorable office you occupy," *id.*, [RT] at pp. 1812-1813, and
> characterized the conduct of the trial as among the "five worst" of
> his judicial career.  *Id.*, at p. 1806.  The court cited the prosecutor
> for contempt based upon his "rude, disrespectful, impolite,
> discourteous and contemptuous" conduct towards defense counsel
> and the court.  CT, at p. 1478.

Petitioner fails to demonstrate that the prosecutor's rude and disrespectful behavior

denied him a right to a fair trial.  Respondent concedes that the prosecutor was "at times

somewhat less than cordial" and  exhibited  "occasional lapses in poise." (Doc. 1.).  The

prosecutor's actions, however, did not rise to the level of prosecutorial misconduct that "so

infected the trial with unfairness."  *Darden*, 477 U.S. at 171.  Petitioner has not shown that

absent the prosecutor's behavior, the verdict would have been different.

## E

Finally, Petitioner contends that his due process rights were violated because the

prosecutor made improper and inflammatory statements to the jury during closing argument.

Petitioner asserts that the prosecutor's statements during closing arguments constituted the most

"egregious misconduct."  Petitioner argues as follows:

> There was no evidence that Mafia Asian Crew was a criminal
> street gang, or that its members were prepared to kill in retaliation
> for disrespect, or that its members "idolized" the Italian Mafia and
> dispatched "hit men," or that its members were oriented toward
> "rivalries, respect, and retaliation," or that they engage in
> "escalating retaliation."

The record shows that the prosecutor argued that Petitioner was a  member of a gang.  He

also asserted that the gang was similar to the Italian Mafia.  "The prosecution may draw

reasonable inferences from the evidence during [closing] argument." *Guam v. Palomo*, 35 F.3d 368, 373 (9th Cir. 1994).  Evidence was presented at trial that Petitioner and his co-defendants were members of a gang.  Petitioner's co-defendant admitted to the booking classification officer during his intake interview that he was a member of the gang.  (RT at 2324).  Petitioner also testified that he was a gang member.  (RT at 3272-74).  Therefore, the prosecutor's statements about gangs were based on trial testimony.

Petitioner has not demonstrated that the prosecutor's statements about gangs or the Mafia during closing arguments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 171.  Given the amount of evidence against Petitioner in the record, it cannot be concluded that absent the prosecutor's remarks during closing arguments, there would have been a different outcome. *Greer*, 483 U.S. at 765.  Therefore, Petitioner is not entitled to federal habeas relief on this ground.

## Conclusion

As set forth above, the California Court of Appeal's decision denying Petitioner relief was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," nor did it result in "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Accordingly, IT IS HEREBY ORDERED that Petitioner's application for habeas corpus relief (Doc. 4) is DENIED.  The clerk is DIRECTED to enter judgment and close the case.

/////

DATED: July 17, 2008

/s/ Arthur L. Alarcón
UNITED STATES CIRCUIT JUDGE
Sitting by Designation