1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SI VAN DANG,

12              Petitioner,              Case No. 2:05-cv-02157 ALA (HC)

13         vs.

14   SCOTT M. KERNAN, Warden,

15              Respondent.              ORDER

16   _____/

17          Petitioner Si Van Dang, a state prisoner proceeding with counsel, timely filed a Notice of

18   Appeal of this Court's denial of his application for a writ of habeas corpus. (Doc. 46).  Before

19   Petitioner can appeal this decision, a Certificate of Appealability must issue. 28 U.S.C.

20   § 2253(c)(1); Fed. R. App. P. 22(b)(1).

21          A Certificate of Appealability may issue under 28 U.S.C. § 2253 "only if the applicant

22   has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

23   The Court must either issue a Certificate of Appealability indicating which issues satisfy the

24   required showing or must state the reasons why a certificate should not issue.  Fed. R. App. P.

25   22(b)(1).

26   /////

1

1    For the reasons set forth in this Court's denial of Petitioner's application for writ of

2  habeas corpus, (Doc. 44), and reiterated in part below,  Petitioner failed to make a substantial

3  showing that his constitutional rights were infringed upon.  Accordingly, a Certificate of

4  Appealability shall not issue.

5                                                    **I**

6    Petitioner filed a direct appeal from the judgment of guilt and his sentence.  In *People v.*

7  *Tran*, No. C027927, 2003 Cal. App. Unpub. LEXIS 4653 (Cal. Ct. App. May 13, 2003), the

8  California Court of Appeal affirmed the Superior Court's judgment.  Petitioner's request for

9  review of the California Court of Appeal's decision was summarily denied by the California

10  Supreme Court on June 29, 2005.

11                                                  **II**

12    On October 26, 2005, Petitioner filed an application for writ of habeas corpus in this

13  Court. (Doc. 1).  Petitioner contended that his application for writ of habeas corpus must be

14  granted based on federal constitutional errors that compel the setting aside of his conviction and

15  sentence.  In analyzing these contentions, this Court complied with the restrictions Congress

16  placed on the authority of federal courts in reviewing applications for habeas corpus relief filed

17  pursuant to U.S.C. § 2254(a).

18    Federal habeas corpus relief is not available to state prisoners for any claim decided on

19  the merits in state court proceedings unless the state court's adjudication of the claim:

20           (1) resulted in a decision that was contrary to, or involved an
             unreasonable application of, clearly established Federal law, as
21           determined by the Supreme Court in the United States; or

22           (2) resulted in a decision that was based on an unreasonable
             determination of the facts in light of the evidence presented in the
23           State court proceeding.

24  28 U.S.C. § 2254(d).

25    This Court looks to the last reasoned state court decision as the basis for the state court

26  denial of Petitioner's state application for habeas relief.  *Robinson v. Ignacio*, 360 F.3d 1044,

                                                    2

1055 (9th Cir. 2004). Because the California Supreme Court summarily denied Petitioner's

habeas application, this Court reviews the California Court of Appeal's decision as the last

reasoned state court opinion addressing Petitioner's arguments. *See Franklin v. Johnson*, 290

F.3d 1223, 1233 n.3 (9th Cir. 2002) (explaining that when a subsequent appeal is denied without

comment, a federal court must review the last state court decision that actually addresses a

claim).

Petitioner sets forth three claims in his petition. First, he contended that his appellate

counsel's failure to raise a *Batson* challenge constituted ineffective assistance of counsel.

Second, Petitioner argued that the trial court's admission of three items of evidence infringed

upon his federal due process rights. Third, Petitioner alleged that the prosecutor engaged in a

pervasive pattern of misconduct that violated his due process rights. This Court found

Petitioner's claims lacked merit.

**III**

Petitioner asserted that his counsel rendered ineffective assistance, and as a result his

Sixth Amendment right to effective counsel was violated. Petitioner argued that his appellate

counsel's failure to raise the trial court's denial of his motion to quash the jury panel based on

*Batson v. Kentucky*, 476 U.S. 79 (1986), constituted a denial of his federal constitutional right to

receive effective assistance of appellate counsel.

To prevail, Petitioner had to establish two elements for an ineffective assistance of

counsel claim. First, Petitioner must show that, considering all the circumstances, counsel's

performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466

U.S. 668, 688 (1984). To this end, Petitioner must identify the acts or omission that are alleged

not to have been the result of reasonable professional judgment. *Strickland*, 466 U.S. at 690.

The court must then determine whether in light of all the circumstances, the identified acts or

omissions were outside the wide range of professional competent assistance. *Id.* at 690. Second,

Petitioner must affirmatively prove prejudice. *Id.* at 693. Prejudice is found where "there is a

1   reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

2   would have been different." *Id.* at 694.  A reasonable probability is "a probability sufficient to

3   undermine confidence in the outcome." *Id.*;  *See also United States v. Murray*, 751 F.2d 1528,

4   1535 (9th Cir. 1985) (holding that counsel's conduct and strategic choices were within the wide

5   range of reasonable professional representation and that combined with overwhelming evidence

6   against the defendant, there was no reasonable probability that the outcome would have

7   differed); *United States v. Schaflander*, 743 F.2d 714, 717-18 (9th Cir. 1984) (per curiam)

8   (holding that counsel's alleged acts and omissions did not fall outside the wide range of

9   professional competent assistance and that defendants failed to establish grounds for relief based

10  on professional incompetence).

11       To determine whether petitioner's appellate counsel's performance fellow below an

12  objective standard of reasonableness, this Court first addressed whether the alleged *Batson*

13  violation occurred.  In *Batson v. Kentucky*, the United States Supreme Court held that purposeful

14  discrimination on the basis of race or gender in the exercise of peremptory challenges violates

15  the Equal Protection Clause of the United States Constitution.  *Batson*, 476 U.S. at 89; *Johnson*

16  *v. California*, 545 U.S. 162 (2005).  This Court found that *Batson* was not violated because

17  Petitioner failed to make his prima facie case to prove the existence of purposeful discrimination.

18                                              **1**

19  *Batson* claims are analyzed pursuant to a three-step test:

20       First, the movant must make a prima facie showing that the
         prosecution has engaged in the discriminatory use of a peremptory
21       challenge by demonstrating that the circumstances raise "an
         inference that the prosecutor used [the challenge] to exclude
22       veniremen from the petit jury on account of their race." [Citation
         omitted.] Second, if the trial court determines a prima facie case
23       has been established, the burden shifts to the prosecution to
         articulate a neutral explanation for challenging the juror  in
24       question. [Citation omitted.] Third, if the prosecution provides
         such an explanation, the trial court must then rule whether the
25       movant has carried his or her burden of proving the existence of
         purposeful discrimination.

26

                                             4

1  *Tolbert v. Gomez*, 190 F.3d 985, 987-88 (9th Cir. 1999) (en banc).

2  Petitioner argued that he was denied his federal constitutional right to effective assistance of

3  counsel when his appellate counsel failed to raise the trial court's denial of his motion to quash

4  the jury panel in his direct appeal based on *Batson*.  (Pet. at 5.)  Respondent contended that the

5  trial judge's finding of no prima facie case of racial bias in the prosecutor's exercise of his

6  peremptory challenges was correct based on the prospective jurors' answers and demeanor.  This

7  Court also concluded that Petitioner failed to make out a cognizable *Batson* claim.

8         Petitioner's *Batson* claim failed for the following reasons.  The mere use of a peremptory

9  challenge to strike a juror of a certain race is not per se unconstitutional. *See United States v.*

10 *Vasquez-Lopez*, 22 F.3d 900, 902 (9th Cir. 1994) (finding that the prosecution uses peremptory

11 challenges to strike jurors of a certain race, without more, [was] not per se unconstitutional).

12 While statistical analysis of the exercise of peremptory challenges can be relevant to the

13 establishment of a prima facie case, it is not dispositive.  *Batson,* 476 U.S. at 96-7.  Here, at least

14 two of the seated jurors were Hispanic.  The inclusion of minority jurors weighs against the

15 inference of discrimination.  *Chinchilla*, 874 F.2d at 698 n.4. Additionally, the prosecution also

16 declined to use its peremptory challenges on several Hispanic-surnamed jurors.  (Augmentation

17 to Reporters' Transcript on Appeal ("ART") at 581-83, 587, 606).

18        An examination of stricken jurors' oral *voir dire* and written examinations fails to lend

19 support to Petitioner's argument that the prosecution purposefully discriminated in striking

20 certain jurors based on race.  Petitioner argued that neither the oral *voir dire* nor written

21 questionnaires of the challenged minority jurors suggest any obvious reasons why they should

22 have been disqualified.  (Pet. at 8).  However, evaluation of the record yielded obvious race-

23 neutral reasons for these peremptory challenges.  As set forth below, the record shows that there

24 was a race-neutral reason why the prosecutor exercised his peremptory challenges against the

25 five African-American and Hispanic jurors.  *Batson*, 476 U.S. at 96.

26

Prospective Juror Willie Metoyer was disqualified for two reasons. He stated that his daughter was shot in an attempted carjacking. No one was ever prosecuted for that crime. He also served on a jury that failed to reach a verdict. These race-neutral facts support the prosecutor's exercise of a peremptory challenge. (ART at 157-58).

Prospective Juror Ausincea Rivera was an elderly woman with a hearing problem who had trouble understanding the questions in the written questionnaire. (ART at 187-89). Given the complexity of this case, the questionable nature of her ability to follow the proceedings was a race-neutral and appropriate concern.

Prospective Juror Joseph Villalobos expressed ambivalence as to whether he could be fair, as well as confusion regarding the meaning of "presumption of innocence." (ART at 191-92, 231). These responses raised appropriate race-neutral concerns regarding whether he was qualified to serve as a juror in a criminal trial.

Prospective Juror Fred Benson stated that he had defended himself against physical aggression on numerous occasions. He also stated that he felt "pretty good" after these experiences. (ART at 330). Since the defense planned to rely on self-defense to raise a reasonable doubt regarding his guilt, the prosecutor's reason for exercise of a peremptory challenge was race-neutral.

Prospective Juror Margaret Antoine cited an instance where she defended herself against an attack from an ex-husband. (ART at 333). She also stated that she might be unable to find an aider and abettor responsible for the natural and probable consequences of the crimes he or she agreed upon. (ART at 347). Since the prosecution's case against the Petitioner's co-defendants was based on the natural and probable consequences doctrine, there was a compelling race-neutral reason for excusing her.[1]

---

[1]

After the trial court had denied plaintiff's *Batson* motion, the prosecution struck a sixth juror. This juror was not considered in the determination of a *Batson* prima facie case, but Petitioner raised a subsequent objection to the dismissal in his memorandum in support of writ of habeas corpus.

2

Petitioner also claimed that the circumstances of the jury selection process at his trial parallels the Supreme Court's decision in *Johnson v. California*, 545 U.S. 162 (2005). In *Johnson*, the prosecution's peremptory challenges were used to remove all the African-American prospective jurors. The resulting jurors, including alternates, were all Caucasian. The instant case is distinguishable. Here, there is no evidence of a systematic exclusion of all minority jurors from the panel. Additionally, the record shows that the prosecution did not utilize its peremptory challenges against several minority jurors who were African-American or Hispanics. (ART at 581-83, 587, 594,  606).

Petitioner's argument that appellate counsel's failure to supplement the *Batson* claim with a request for a comparative jury analysis constituted ineffective assistance of counsel also lacks merit. *See, e.g., Boyd v. Newland*, 467 F.3d 1139, 1148-49 (9th Cir. 2006) (holding that comparative juror analysis is an important tool that courts should utilize on appeal when assessing a *Batson* claim).

To evaluate whether a state court unreasonably applied the *Strickland* standard in a habeas corpus proceeding filed pursuant to § 2254(a), federal courts must examine trial counsel's representation in light of the facts of the case and the state law relevant to counsel's alleged inferior performance. *See, e.g., Wiggins v. Smith*, 539 U.S. 510, 536 (2003) (finding trial counsel's representation deficient in part for failing to present expert testimony that would have been admissible under Maryland state law); *Stenson v. Lambert*, 504 F.3d 873, 88990 (9th Cir. 2007) (holding that counsel's representation was not ineffective because the theory of the case that the petitioner desired his counsel to follow relied on evidence that would not have been

Prospective Juror Angel Villalobos was Joseph's Villalobos' brother (ART at 200). He was dismissed after the trial court evaluated and denied the *Batson* motion, which makes his dismissal irrelevant in establishing a prima facie case of discrimination. Furthermore, Mr. Villalobos expressed belief that law enforcement had ignored his sister-in-law's plight as a robbery victim. (ART 255). This, in conjunction with the fact that his brother had previously been excused, supports the prosecution's use of a peremptory challenge.

1  admissible under state law).

2        In the instant matter, this Court looked to the relevant California law to assess whether

3  appellate counsel acted unreasonably. Under controlling California authority, a comparative jury

4  analysis would have been irrelevant.  The California Supreme Court held in *People v. Johnson*,

5  30 Cal.4th 1302 (2003), that a comparative jury analysis on appeal is unreliable and does not give

6  due deference to the trial court's ruling.  *Id.* at 1306.  The Court determined that a comparative

7  jury analysis on appeal "would undermine the trial court's credibility determinations and would

8  discount 'the variety of [subjective] factors and considerations,' including 'prospective jurors'

9  body language or manner of answering questions,' which legitimately informs a trial lawyer's

10  decision to exercise peremptory challenges.  *Id.* at 1320. Therefore, a comparative jury analysis to

11  determine whether the trial court erred in denying an objection to the use of peremptory

12  challenges is not required.  Appellate counsel's choice not to raise a *Batson* claim on these

13  grounds was not unreasonable. Thus, the state court reasonably denied Petitioner's claim of

14  ineffective assistance of appellate counsel.

15        Furthermore, Petitioner was required to make an objection based on the issue of

16  comparative jury analysis at trial.  Pursuant to California law, to preserve an issue on appeal,

17  Petitioner is required to make an objection at trial.  *People v. Clark,* 857 P.2d 1099, 1122, n.13

18  (Cal. 1993) (holding that when a party does not raise an argument at trial, he may not do so on

19  appeal).  If Petitioner is unable to demonstrate that contemporaneous objections were made to the

20  issues above, then the doctrine of procedural default bars this Court from addressing those claims.

21  *Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (holding that federal habeas is barred if

22  the petitioner fails to meet a state procedural requirement).  Here, the record fails to show that

23  Petitioner's trial counsel requested a comparative analysis of the oral *voir dire* and written

24  questionnaires of challenged and non-challenged jurors.[2]  Because no contemporaneous objection

25  _____

26        [2]
        Petitioner was represented by separate counsel on his direct appeal.

was made, appellate counsel acted reasonably in not raising the failure to argue that trial court erred in not requiring a comparative analysis.

In light of the traditional deference towards the trial court's assessment of a prima facie case, the facts and circumstances of the instant case do not give rise to the inference of discrimination in violation of *Batson*. There are race-neutral reasons for the exercises of the peremptory challenges.  There is also an absence of circumstances apparent on the record of *voir dire* to sufficiently raise an inference of discrimination.

Based on the foregoing, this Court found that Petitioner failed to establish a prima facie case sufficient to constitute a *Batson* claim.  *Gordon v. Duran*, 895 F.2d 610, 615 (9th Cir. 1989) (finding that an ineffective assistance of counsel claim has no merit where Petitioner fails to make a showing of systematic exclusion of African-Americans from the jury).  Petitioner failed to set forth acts or omissions that are alleged not to have been the result of reasonable professional judgment.  *Strickland*, 466 at 690.  Accordingly, Petitioner's appellate counsel's performance did not fall below an objective standard of reasonableness.  Thus, the claim of ineffective assistance of counsel on appeal fails.

**IV**

Petitioner claimed that his federal due process rights were violated because the trial court erroneously admitted three items of evidence.  For the following reasons, this Court found that Petitioner failed to make a sufficient showing that his federal constitutional rights were infringed upon.  Therefore, a Certificate of Appealability shall not issue as to these claims.

**1**

Petitioner first argued that the trial court erred when it allowed the prosecution to introduce evidence of Petitioner's prior gang affiliation.  He argued that the admission of such evidence was prejudicial and violated his due process rights.

A federal court cannot disturb a state court's decision to admit evidence on due process

1   grounds in a § 2254(a) proceeding unless the admission of the evidence was "arbitrary or so

2   prejudicial that it rendered the trial fundamentally unfair." *See Walters v. Maass*, 45 F.3d 1355,

3   1357 (9th Cir. 1995) (holding that the state court's admission of evidence relating to defendant's

4   prior convictions was not arbitrary or unduly prejudicial as to deny defendant a fair trial because

5   the trial court gave limiting instructions for the use of admitted evidence).  To grant relief on this

6   ground, a federal habeas court must find that the error had "a substantial and injurious effect on

7   the verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

8        Because the state court did not find that Petitioner's trial was fundamentally unfair, it was

9   unnecessary for this Court to determine whether it was error for the evidence to be admitted.

10  "The court in its discretion may exclude evidence if its probative value is substantially

11  outweighed by the probability that its admission will (a) necessitate undue consumption of time

12  or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the

13  jury." Cal. Evid. Code § 352 (Deering 2008).  Here, the California Court of Appeal held that this

14  evidence was relevant to issues of intent, motive, and whether murder or attempted murder could

15  be a natural and probable consequence of an assault perpetrated by a gang.  The California Court

16  of Appeal also held that any prejudicial effect of this evidence was outweighed by its probative

17  value. *Tran*, 2003 LEXIS 4653, at *37- 43.

18        "Gang evidence is admissible if relevant to motive or identity, so long as its probative

19  value is not outweighed by its prejudicial effect." *People v. Williams*, 16 Cal. 4th 153, 193

20  (1997).  Here, evidence of defendants' gang affiliation and their beliefs about the victim's

21  affiliation with a rival gang was relevant to the prosecution's theory of why the victim was shot.

22  The prosecution's theory of the crime was based on the notion that a person who aids and abets

23  another in the commission of a crime is guilty of any other crime committed by a principal which

24  is the natural and probable consequence of the crime. Evidence of gang affiliations was relevant

25  to the prosecution's theory that murder or attempted murder was a natural and probable

26  consequence of an assault committed by a gang.  Thus, the probative value of the evidence of

10

1   gang affiliation outweighed any prejudicial effect.  Petitioner failed to demonstrate that admission

2   of this evidence rendered his trial fundamentally unfair.  *Walters,* 45 F.3d at 1357.

**2**

3

4   Petitioner also asserted that the trial court erred when it permitted the prosecution to

5   introduce evidence of weapons and ammunition that was not linked to the charged crimes.  He

6   contended that his due process rights were violated and that he was denied a fair trial by the

7   introduction of this evidence.  Petitioner argued that this evidence was only relevant to attack his

8   character and, therefore, was inadmissible under California Evidence Code Section 352.  He also

9   argued that the evidence was irrelevant.

10   The trial court, after weighing the probative value of that evidence against its prejudicial

11   effect, admitted other weapons found in the car under California Evidence Code Section 352.

12   (Rep. Tr. at 157).[3] The California Court of Appeal held that the trial court's evidentiary ruling

13   was not error because there was no reasonable likelihood that a different verdict would have been

14   reached in the absence of the foregoing evidence.  The California Court of Appeal found that

15   substantial evidence demonstrated that Petitioner and co-defendants were responsible for

16   planning and execution of the shootings. *Tran*, 2003 LEXIS 4653, at *49-52.

17   Evidence of the possession of ammunition is of probative value for the permissible

18   purpose of demonstrating a consciousness of guilt against the Petitioner's claim of self-defense.

19   In *People v. Riser*, 47 Cal. 2d 566 (1957), the California Supreme Court held that admission of

20   weapons other than the murder weapon discovered in defendants' possession at the time of arrest

21   several weeks after the commission of the crime, was error.  *Id*. at 577.  Here, the circumstances

22   are distinguishable.  The weapons were found in the Petitioner's car by police officers shortly

23   after the commission of the crimes. There is no direct evidence set forth as to the fatal shooting

24   that would render this evidence irrelevant to establish facts material to the proof of the charged

25

26   [3] "Rep. Tr." refers to the reporter's transcript on appeal of San Joaquin County Superior Court
     case number SC060738A.

offenses. *See People v. Neely*, 6 Cal. 4th 877, 896 (1993) (holding that defendant failed to establish that challenged admission of gun and ammunition was inadmissible under *Riser*). Thus, admission of the unrelated weapons is not prohibited by *Riser*. Additionally, evidence of the defendants' arsenal was highly probative to proving the prosecution's theory that an attack would result in the use of lethal force, pursuant to the natural and probable consequences doctrine.

Admission of challenged evidence violates due process "[o]nly if there are *no* permissible inferences the jury may draw from the evidence . . . ." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). Here, the action of removing the quantity of ammunition gave rise to a rational inference that they were affirmatively avoiding police discovery of the weapons and were not victims who acted in self-defense. The jury can also make other fair and rational inferences from this evidence regarding the consciousness of guilt, as set forth by Respondent in Respondent's Answer to the Petition for Writ of Habeas Corpus:

> Moreover, as the state courts found, the presence of this "virtual arsenal of other weapons" made it more likely that (1) the attack on Andy would result in the use of lethal force and (2) that Petitioner's codefendants would know that firearms would likely be involved, or at least available, during this confrontation.

If admissible for this purpose, the evidence was not irrelevant. Thus, the evidence is relevant and prejudicial effect is outweighed by its probative value. Petitioner must demonstrate that admission of this evidence rendered his trial fundamentally unfair. *Id.* Evidence in this case shows that Petitioner and his co-defendants planned and carried out a home invasion involving deadly firearms. The overwhelming weight of the evidence also indicates that Petitioner was the killer. Therefore, the admission of evidence of other ammunition could not have had a significant impact on the deliberations regarding Petitioner's guilt or responsibility. Because admission of this evidence did not have "a substantial and injurious effect on the verdict," Petitioner was not entitled to federal habeas relief on this ground. *Brecht*, 507 U.S. at 623.

**3**

Petitioner next contention was that he was unconstitutionally denied the right to confront a

1   witness.  He claimed that the trial court erred when it denied his request to redact portions of his

2   tape-recorded interview with the police which included questions posed, or statements made, by

3   interviewing officers in which they disputed Petitioner's version of the shooting.  Petitioner

4   argued that the following three remarks from the interrogation tapes should have been redacted:

5   1) statements from interrogating officers that they did not believe that Petitioner acted in self-

6   defense and that neither would the jury; 2) statements from interrogating officers that individuals

7   in the neighborhood identified Petitioner as the shooter; and 3) statements from interrogating

8   officers that the co-defendants stated that Petitioner carried the murder weapon into the house.

9   Petitioner contends that the admission of such evidence violated his Sixth Amendment right to

10  confrontation and cross-examination of witnesses.

11       The Ninth Circuit has held that admission of evidence infringes upon due process rights

12  only when "there are *no* permissible inferences the jury may draw from the evidence . . . ."

13  *Jammal v. Van de Camp*, 926 F.2d 918, 920 (9th Cir. 1991).  Petitioner failed to support his

14  contention that the jurors would perceive the interrogating officers' statements as factual

15  assertions of additional evidence.  Indeed, the trial court specifically instructed the jury to ignore

16  any alleged statements of facts made by interrogating officers.  (Rep. Tr. at 3841).  Jurors are

17  assumed to abide by such court instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  No

18  facts are set forth to the contrary in this instant case.  Moreover, the two detectives who

19  interrogated Petitioner were available for cross-examination.  Petitioner, however, chose not to

20  exercise his option to recall the detectives, both witnesses in this case, for cross-examination.

21  The introduction of the un-redacted interview did not violate Petitioner's Sixth Amendment right

22  to confrontation and cross-examination of witnesses.

23                                            **V**

24       Petitioner's final claim is that his due process rights were violated by the prosecutor's

25  pervasive pattern of misconduct throughout his trial.  (Pet. at 44).  Petitioner argued that the

26  prosecutor's pattern of misconduct rendered his trial fundamentally unfair.  Specifically Petitioner

                                              13

1 alleged that the prosecutor: (1) engaged in flagrant discovery violations; (2) violated evidentiary

2 rulings; (3) evidenced bad faith throughout trial; (4) engaged in rude and disrespectful behavior

3 towards defense counsel and the trial court; and (5) made improper and inflammatory statements

4 to the jury during closing argument. *Id.*

5       Habeas corpus relief will be granted on grounds of prosecutorial misconduct only when it

6 "so infected the trial with unfairness as to make the resulting conviction a denial of due process."

7 *Darden v. Wainwright*, 477 U.S. 168, 171  (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S.

8 637, 643 (1974)); *see also Bonin v. Calderon*, 59 F.3d 815, 843 (9th Cir. 1995) (holding that

9 habeas corpus relief only can only be granted  if the error "had substantial and injurious effect or

10 influence in determining the jury's verdict.") (quoting *Brecht*, 507 U.S. at 622).  To constitute a

11 due process violation, the prosecutorial misconduct must be "of sufficient significance to result in

12 the denial of the defendant's right to a fair trial."  *Greer v. Miller*, 483 U.S. 756, 765 (1987)

13 (citations omitted).

14       Under this standard, a petitioner must show that there is a reasonable probability that the

15 error complained of affected the outcome of the trial - *i.e.*, that absent the alleged impropriety, the

16 verdict probably would have been different.  *Id.* at 765-66; *United States v. Weitzenhoff*, 35 F.3d

17 1275, 1291 (9th Cir. 1994).  "[T]he touchstone of due process analysis in cases of alleged

18 prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor . . . [T]he

19 aim of due process 'is not punishment of society for the misdeeds of the prosecutor but avoidance

20 of an unfair trial to the accused.'" *Smith v. Phillips*, 455 U.S. 209, 219 (1982) (quoting *Brady v.*

21 *Maryland*, 373 U.S. 83, 87 (1963)).  The standard of review for a claim of prosecutorial

22 misconduct on a writ of habeas corpus is "'the narrow one of due process, and not the broad

23 exercise of supervisory power.'" *Darden v. Wainright*, 477 U.S. 168, 181 (1986) (quoting

24 *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).  Here, Petitioner failed to show that the

25 alleged prosecutorial misconduct affected the jury's verdict and deprived him of his due process

26 right to a fair trial.

1

**VI**

2       In accordance with the above, IT IS HEREBY ORDERED that a Certificate of

3   Appealability shall not issue.

4   /////

5   DATED: September 4, 2008

                                                /s/ Arthur L. Alarcón
6                                               UNITED STATES CIRCUIT JUDGE
                                                Sitting by Designation
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

15